IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  09-cv-00516-WYD-CBS

DALE ASH,

      Plaintiff,

v.

CONTINENTAL WESTERN INSURANCE COMPANY, d/b/a CONTINENTAL
WESTERN GROUP, an Iowa insurance company,

      Defendant.

---

## ORDER

---

I.    <u>Background</u>

      THIS MATTER is before the court on the Motion for Summary Judgment by

Defendant Continental Western Insurance Company ("Continental Western"), filed

March 1, 2010, ECF No. 16.

      This action arises out of Plaintiff's claim for underinsured motorist benefits (UM)

made under his employer's UM policy following a work-related accident.  Plaintiff

asserts a singe claim for breach of contract.

      Voluminous facts have been asserted by both parties in connection with the

summary judgment motion and briefing.  I will briefly summarize those facts which I

deem pertinent to my ruling.  I have, however, construed all of the facts in the light most

favorable to Plaintiff as I must for purposes of this summary judgment motion.  *See*

*Carolina Cas. Ins. Co. v. Yeates*, 533 F.3d 1202, 1204 (10th Cir. 2008).

Continental Western issued a policy of business auto insurance to Plaintiff's employer, ABCD Soderberg, LLC ("ABCD"), where Plaintiff was employed as plumber. The policy included UM/UIM insurance coverage, which provides as follows:

> A.  Coverage
>
> 1)  We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."
>
> B.  Who is an Insured?
>
> If the named insured is designated in the declaration as:
>
> 2)  A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>
>     a)  anyone "occupying" or using a covered "auto" . . ..

On March 16, 2007, Plaintiff, in the course and scope of his employment, was struck by an automobile in a grocery store parking lot while working at or near a sewer clean-out hole. Plaintiff drove to the job-site in an ABCD van, bearing the ABCD name and phone number. The subject van is a GMC Savannah. When Plaintiff arrived at the job-site, co-workers had set up shopping carts in an effort to block off both sides of the parking lot aisle where they were working. Prior to the accident, a co-worker of Plaintiff's was operating a "jetter" from a manhole located near the street while Plaintiff

was positioned at the clean-out at a point between the manhole and the store, looking and listening at the clean-out to try to determine the source of the blockage.

Plaintiff contends that in addition to using the shopping carts as a protective measure, he was also using the ABCD van as a barricade, and that he had purposefully positioned the van in the aisle of the parking lot, as opposed to one of the designated parking spaces.  Defendant disputes Plaintiff's contention that he intended to use the van as a barricade at the time of the accident.

It is undisputed that Plaintiff turned off the van when he arrived, and did not activate any emergency flashers, turn signals or other lights in an effort to warn or alert people that work was being done in the area.  The van has no rotating amber light on top or overhead light bar, like those found on highway maintenance vehicles, no rooftop flashing lights, no additional flashers, signals or other lights on the front or back, and had no printed warnings or cautionary language.  Other than a ladder rack, the van had no exterior modifications.  While the van was parked on one end of the aisle where Plaintiff was working, it did not prevent the accident because the underinsured driver pulled out of a parking stall between the van and the area where Plaintiff was working, turned right down the parking aisle, and struck Plaintiff.

Mr. Soderberg, Plaintiff's employer, testified in his deposition that he did not encourage employees to use the company vehicles as a roadblock or barricade, and that he did not purchase the van for that purpose.  Mr. Soderberg agreed, however, that there was no ABCD policy that would specifically prohibit an employee from using a company van to protect themselves.  Moreover, he agreed that it was not outside the

realm of possibility that when one of his employees was doing outdoor work, that employee could be involved in an accident where a work van was being used as a barricade.  It is undisputed that the insurance agent who sold the at-issue insurance policy understood that ABCD's business was not limited to residential projects and included a range of plumbing services, including outdoor work.  In addition, there is no specific exclusion in the at-issue policy that would apply when a vehicle is used as a barricade.

Following an investigation, Defendant denied Plaintiff's claim for UIM benefits based on its conclusion that Plaintiff was not "using" the ABCD van at the time of the accident, and the accident did not arise out of any "use" of that vehicle.  In response, Plaintiff initiated this lawsuit.

II.   Analysis

In the instant motion, Defendant seeks summary judgment on Plaintiff's single breach of contract claim based on its assertion that Plaintiff is not an "insured" under the subject policy because he was not "occupying" or "using" the ABCD van at the time of the accident.  Plaintiff contends that he was "using" the van as a barricade at the time of the accident.  According to Defendant, whether Plaintiff did or did not attempt to use the van as a barricade is legally irrelevant because the van is not designed or intended to be used as a barricade, and Plaintiff's claimed "use" of the van for this purpose cannot create coverage.  Defendant also asserts that Plaintiff cannot show that his accident would not have occurred "but for" his claimed "use" of the van.

-4-

A.    <u>Summary Judgment Standard</u>

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).

The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party.  *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

B.    <u>Legal Standard</u>

Under Colorado law, an insurance policy is a contract between the insured and the insurer, and as such, it is to be interpreted according to settled principles of contract law.  *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002).  Pursuant to Colo. Rev.

Stat. § 10-4-609(1)(a), automobile insurers in Colorado are "require[d] . . . to provide coverage against uninsured motorist for injuries 'arising out of the ownership, maintenance or use of a motor vehicle,' unless rejected in writing by the insured." *See State Farm Mut. Auto. Ins. Co. v. Fisher*, 618 F.3d 1103, 1106 (10th Cir. 2010) (quoting C.R.S. § 10-4-609(1)(a)).  The Colorado Supreme Court has found that because UM policy provisions are an express attempt to conform to statutory requirements, the courts should interpret the terms in those policies to reflect the overall legislative purpose of the UM statute, which is "to provide compensation for injury caused by an uninsured motorist equal to that obtainable for injury caused by an insured motorist." *State Farm Mut. Auto. Ins. Co. v. Kastner*, 77 P.3d 1256, 1260 (Colo. 2003) (internal quotation marks omitted).   The Colorado Supreme Court has held that a plaintiff is entitled to recover under the UM provisions of an insurance policy entered pursuant to C.R.S. § 10-4-609(1)(a) "(1) where the motor vehicle is being used in a manner reasonably foreseeable at the time the parties contracted for the insurance and (2) the 'use' of the vehicle is inextricably linked to the plaintiff's injury." *Kastner*, 77 P.3d at 1258.

      1.   Plaintiff's "Use" of the Van

I first address whether, at the time of the accident, Plaintiff was "using" the ABCD van in a reasonably foreseeable manner.  The Colorado Supreme Court defines "use" broadly.  *Atena Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 102 (Colo. 1995). However, "use of a motor vehicle will include only those uses that are 'conceivable' at the time of contracting for insurance and 'not foreign to [the vehicle's] inherent purpose."

*Kastner*, 77 P.3d at 1262 (Citing *Kohl v. Union Ins. Co.*, 731 P.2d 134, 136 n. 2). Courts will generally find coverage if the use in question "is one that the insured claims to have contemplated or intended at the time of contracting for insurance." *Id.* at 1261. Where the intent of the insured is not clear, whether a particular "use" is covered is determined by looking at all the factual circumstances "'including the particular characteristics of the vehicle and the intention of [both] parties to the insurance contract.'" *Id.* (quoting *McMichael*, 906 P.2d at 102).

"Although the term 'use' is broad enough to cover activities beyond mere 'transportation,' it is not so broad as to include acts that are clearly independent of a vehicle's operation." *Id.* at 1262. "Some vehicles may have an inherent non-transportation purpose that is plain and obvious to all contracting parties given the nature of the vehicle in question." *Id.* For example, in *McMichael*, *supra*, the Colorado Supreme Court found that the claimant who was injured while sawing concrete barriers some distance in front of the insured truck was "using" the truck as a barricade or warning device at the time of the accident for purposes of triggering coverage under a UM policy. In that case, the Supreme Court noted that the truck was specially equipped with an overhead beacon and emergency flashers, both of which were on at the time of the accident. *McMichael*, 906 P.2d at 103. In addition, the truck carried protective barriers to the work site that were placed around the truck and in the median for protection. *Id.* Based on the fact that the truck was modified with warning devices, the Court concluded that the truck was intended to be used as a protective device. *See also, Kohl*, 731 P.2d at 136 (transportation of hunters and their weapons to areas where

they can pursue their sport is conceivable use of four-wheel-drive vehicle); *Trinity Universal Ins. Co. v. Hall*, 690 P.2d 227, 231 (Colo. 1984) (injury caused by a falling collapsible side awning permanently attached to a truck used as a refreshment stand arose out of "use" of the truck).

Here, while Mr. Soderberg testified that use of a company van as a barricade was not beyond the realm of possibility, it is far from clear that he contemplated or intended this type of use at the time he contracted for the at-issue insurance policy. In fact, the record suggests that Mr. Soderberg did not conceive of this type of use as he testified that he did not encourage employees to use the company vehicles as a roadblock or barricade, and that he did not purchase the van for that purpose. Construing the facts in the light most favorable to Plaintiff, the intent of the parties at the time they contracted for insurance was, at best, unclear.

Turning to the particular characteristics of the van, I also find that there is no evidence in the record to suggest that it was intended for use as a barricade. It is true that Plaintiff contends he was using the van as a "barricade." However, the undisputed facts simply do not establish that van had an inherent non-transportation purpose or, specifically, that one of the inherent purposes of the van was use as a barricade. As Defendant notes, it is undisputed that the van has no special modifications, such as an overhead beacon, that would make it suitable for use as a barricade. The van has no rotating amber light on top or overhead light bar, no rooftop flashing lights or other flashers, and had no printed warnings or cautionary language. Even if Plaintiff was using the van as a barricade, there is nothing in the record to indicate that this use was

not "foreign to [the van's] inherent purpose at the time of the accident."  The fact that the van was to be used in connection with the commercial plumbing business is not enough to establish that it had an inherent non-transportation purpose as a barricade that was "plain and obvious to all contracting parties."  *Kastner*, 77 P.3d at 1262.

        2.      <u>Whether the 'Use' of the Vehicle is Inextricably Linked to the Plaintiff's Injury</u>

Because I find that Plaintiff was not using the van in a manner reasonably foreseeable at the time the parties contracted for the at-issue insurance, I need not address whether Plaintiff's "use" is inextricably linked to his injury.  *Kastner*, 77 P.3d at 1258.

III.    <u>Conclusion</u>

Therefore, for the reasons set forth herein, the Motion for Summary Judgment by Defendant Continental Western Insurance Company ("Continental Western"), filed March 1, 2010, ECF No. 16. Is **GRANTED** and Judgment shall enter in favor of Defendant on Plaintiff's claim for relief.

Dated:  December 17, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge